UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BLAKE RICHARD ANTHONY,

      Petitioner,

    v.                       Case No.:  2:26-cv-01629-SPC-KRH

WARDEN, SOUTH FLORIDA
DETENTION FACILITY *et al.*,

      Respondents,

---

**OPINION AND ORDER**

Before the Court are Blake Richard Anthony's Second Petition for Writ of Habeas Corpus (Doc. 1) and the government's response (Doc. 7).

Anthony is a native and citizen of Jamaica who became a lawful permanent resident of the United States on January 21, 1981. On May 4, 2001, he was convicted of possession of a forged instrument and sentenced to five years of probation. The government took no steps to revoke Anthony's lawful permanent resident status or remove him from the United States for twenty-five years. On April 13, 2026, Anthony arrived in Miami on a Carnival cruise ship. Border Patrol arrested him and commenced removal proceeding by issuing a notice to appear. On May 22, 2026, an immigration judge determined he lacked jurisdiction to consider Anthony's request for a change in custody status because he is an "arriving alien." Anthony remains detained at Alligator

Alcatraz without an opportunity to seek release on bond. He claims his continued detention violates his Fifth Amendment right to due process.

The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

In *Landon v. Plasencia*, the Supreme Court recognized that lawful permanent residents returning from temporary international travel have more robust due process rights than a noncitizen seeking initial admission. 459 U.S. 21, 32 (1982) ("once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly"). The Court remanded *Plasencia* so the lower court could consider the *Mathews* factors to decide what process is due—they are (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

2

and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Anthony's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. The government's actions give Anthony no opportunity to contest the reasonableness of his detention. What is more, the Court recognizes significant value in additional safeguards, like a bond hearing at which the government must demonstrate a justification for detention that outweighs Anthony's significant liberty interest. Without such a hearing, there is nothing to ensure Anthony's detention serves a statutory purpose and is used in accordance with the Constitution and the laws enacted by Congress.

Third, the government has not established any legitimate interest in denying Anthony a bond hearing. At no point since Anthony's arrest has ICE been required to show that either goal of immigration detention—to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community—outweighs Anthony's right to be free from physical restraint. A bond hearing where the government bears the burden of proof will preserve the two goals of immigration detention while accounting for the government's interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.

3

The Court will thus order the respondents to either bring Anthony before an immigration judge for an individualized bond hearing within ten days or release him under reasonable conditions of supervision. To satisfy this Order, the hearing must include—and the resulting order must reflect—consideration of evidence properly submitted by the petitioner and the factors announced in *In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006), and the government must bear the burden of proof to justify continued detention. The Court is aware the EOIR is the agency that conducts bond hearings, it is not a party to this action, and it may decide not to hold a hearing that satisfies these requirements. If the respondents are unable to ensure Anthony receives a bond hearing that complies with this Order within ten days, they must release him, but they may impose reasonable terms of supervision.

Accordingly, it is hereby

**ORDERED**:

Blake Richard Anthony's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

(1)     Within **ten days** of this Opinion and Order, the respondents shall either (1) bring Anthony for an individualized bond hearing before an immigration judge or (2) release Anthony under reasonable conditions of supervision. If the respondents release Anthony, they shall give him telephone access so he can arrange transportation from the facility.

4

(2)    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on June 3, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties or Record

5